# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RALPH SWAN, | § | |
| | § | |
| Defendant Below, | § | No. 150, 2020 |
| Appellant, | § | |
| | § | |
| v. | § | Court Below – Superior Court |
| | § | of the State of Delaware |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | ID No. 0002004767A |
| Appellee. | § | |

Submitted:  December 2, 2020
Decided:  March 1, 2021

Before **SEITZ**, Chief Justice; **TRAYNOR** and **MONTGOMERY-REEVES**, Justices.

Upon appeal from the Superior Court of Delaware.  **AFFIRMED**

Stamatios Stamoulis, Esquire, STAMOULIS & WEINBLATT, LLC, Wilmington, Delaware; *Attorney for Appellant, Ralph Swan.*

John Williams, Esquire, DELAWARE DEPARTMENT OF JUSTICE, Dover, Delaware; *Attorney for Appellee, the State of Delaware.*

**MONTGOMERY-REEVES**, Justice:

The appellant, Ralph Swan, appeals the denial of his most recent motion for postconviction relief and motion to recuse. For the reasons set forth below, this Court holds that the Superior Court did not abuse its discretion by denying Swan's motion for postconviction relief. Nor did the court err by denying his motion to recuse. Thus, we AFFIRM the judgment of the Superior Court.

## I. BACKGROUND

On the evening of November 4, 1996, two masked and camouflaged men crashed through the glass patio door of Kenneth Warren's home.[1] Warren was fatally shot in front of his wife and child during the subsequent struggle. Tina Warren, Kenneth's wife, observed that one assailant appeared to have been shot in the shoulder.[2] The investigation went cold until Bridget Phillips, ex-wife of co-defendant Adam Norcross, contacted Delaware State Police in 1999.[3] She explained that Norcross and Swan had planned to rob a house but found it occupied.[4] Phillips added that the victim fired a shot and died because he tried to play hero.[5]

---

[1] App. to Opening Br. 4940 (hereinafter "A . . .").
[2] A4941.
[3] A4944.
[4] *Id.*
[5] *Id.*

Delaware State Police arrested Norcross on February 9, 2000.[6]  The next day, Norcross admitted that he was present during the incident.[7]  On February 25, 2000, the Delaware State Police arrested Swan.[8]  Swan and Norcross[9] were indicted on April 3, 2000, on (i) three counts of first degree murder (one count of intentional and two counts of felony murder), (ii) one count of first degree robbery, (iii) one count of first degree burglary, (iv) one count of second degree conspiracy, and (v) multiple counts of possession of a deadly weapon during the commission of a felony.[10]  Swan was ultimately convicted of all charges on June 30, 2001.[11]  The jury recommended that the aggravating circumstances outweighed the mitigating circumstances, and Swan was sentenced to death.[12]  On April 9, 2003, this Court affirmed Swan's conviction and sentence.[13]  The United States Supreme Court denied certiorari on October 6, 2003.[14]

Swan obtained new counsel and filed his first motion for postconviction relief under Superior Court Criminal Rule 61 on January 3, 2006.[15]  Swan also concurrently filed his second motion for a new trial, which was ultimately denied.[16]  While his Rule 61 motion

---

[6] *Id.*
[7] A4944-45.
[8] A4945.
[9] Defendant Norcross was tried separately. *See Norcross v. State*, 816 A.2d 757 (Del. 2003).
[10] A62-68.
[11] A2989-91.
[12] A3416-48.
[13] *See Swan v. State*, 820 A.2d 342 (Del. 2003).
[14] *See Swan v. Delaware*, 540 U.S. 896 (2003).
[15] A16; A3459-76.
[16] Opening Br. Ex. A, at 3.

was still pending in the Superior Court, Swan appealed the denial of his second motion for a new trial.[17] Swan argued that potential DNA evidence could affect the disposition of the motion for a new trial. This Court remanded the case, requiring the Superior Court to consider the DNA evidence in connection with the then-pending motion for postconviction relief.[18]

Swan filed an amended Rule 61 motion for postconviction relief on December 14, 2006.[19] A second amended motion was docketed on October 2, 2007.[20] The Superior Court conducted a five-day evidentiary hearing in November 2007[21] and July 2008,[22] and ultimately denied Swan's motion for postconviction relief and the second motion for a new trial.[23]

In April 2010, Swan appealed the Superior Court's denial of the motion for postconviction relief and the second motion for a new trial.[24] This Court remanded the case, again, to the Superior Court for further determinations.[25] The Superior Court resolved the issues raised in the second remand.[26] Thereafter, this Court affirmed the Superior Court's

---

[17] *Id.*
[18] *See Swan v. State*, 2007 WL 1138474 (Del. Apr. 17, 2007).
[19] A22; A3596-3722.
[20] Opening Br. Ex. A, at 3; A24.
[21] A24.
[22] A26.
[23] A4890-915.
[24] A4916.
[25] A4919-21.
[26] A4923; *Swan v. State*, 2011 WL 976788 (Del. Super. Ct. Mar. 16, 2011).

denial of Swan's motion for postconviction relief and a new trial.[27]  The United States Supreme Court denied certiorari.[28]

On September 27, 2011, Swan filed a petition for writ of *habeas corpus* in the United States District Court for the District of Delaware, which he amended on January 24, 2012.[29] The State argued that seven of the fifteen claims raised in the *habeas* petition had never been raised in State court.[30]  Swan petitioned the federal court to stay the *habeas* proceedings to allow him to return to state courts to exhaust all unexhausted claims.[31]  The District Court granted the stay.[32]  Swan filed another Rule 61 motion for postconviction relief in the Superior Court on October 21, 2013.[33]

On February 21, 2017, following this Court's 2016 death penalty and retroactivity decisions in *Rauf v. State*[34] and *Powell v. State*,[35] respectively, the Superior Court resentenced Swan to "life without the possibility of parole or probation or any other reduction of sentence."[36]  Swan filed an "Amendment to Corrected Motion for Postconviction Relief" on March 28, 2017.[37]  The Superior Court conducted a hearing on the applicability of the

---

[27] *See Swan v. State*, 28 A.3d 362 (Del. 2011).
[28] *Swan v. Delaware*, 566 U.S. 912 (2012).
[29] Opening Br. Ex. A, at 4.
[30] *Id.*; *see Swan v. Coupe*, 967 F. Supp. 2d 1008, 1011(D. Del. 2013).
[31] *Swan*, 967 F. Supp. 2d at 1010.
[32] *Id.* at 1013.
[33] A29.
[34] 145 A.3d 430 (Del. 2016).
[35] 153 A.3d 69 (Del. 2016).
[36] Opening Br. Ex. A, at 5.
[37] A42.

procedural bars of Rule 61(i)(1)-(4) to Swan's pending postconviction relief motion on May 23, 2017. After consideration, the Superior Court identified six claims that "for the moment [are] not dismissed on procedural grounds."[38]

On March 14, 2019, Judge Graves was assigned to handle Swan's pending motions. On April 4, 2019, the parties attended an office conference to address the status of the motion and the schedule going forward.[39] The defense filed a Motion of Recusal on June 19, 2019, which the court denied on June 20, 2019.[40] The court held evidentiary hearings on June 20, 2019, June 26, 2019, October 8, 2019, and December 18, 2019.[41] The parties filed final memoranda on February 3, 2020.[42] On February 21, 2020, the Superior Court denied Swan's motion for postconviction relief.

## II.    ANALYSIS

In this appeal, Swan challenges two decisions of the Superior Court. First, he argues that the Superior Court erred, for many reasons, in denying his Rule 61 motion for postconviction relief. Second, Swan argues that the Superior Court erred by denying the motion to recuse.

---

[38] A44; A8253-54.
[39] A47-48.
[40] A54.
[41] A54-55; A60.
[42] A61.

This Court reviews the Superior Court's denial of a motion for post-conviction relief for an abuse of discretion.[43] We review "legal or constitutional questions, including ineffective-assistance-of-counsel claims, *de novo*."[44] We review a trial judge's recusal decision for an abuse of discretion.[45]

## A.    The Superior Court Did Not Err in Denying Swan's Rule 61 Motion

Swan first contends that the Superior Court erred in denying his Rule 61 motion for postconviction relief. When the 2013 postconviction motion was filed, the "old" version of Rule 61 was in effect and therefore is applicable to this appeal.[46] The 2013 version of Rule 61(i), which governs procedural bars to a defendant's motion for postconviction relief, states as follows:

> Bars to relief. (l) Time limitation. A motion for postconviction relief may not be filed more than one year after the judgment of conviction is final or, if it asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final, more than one year after the right is first recognized by the Supreme Court of Delaware or by the United States Supreme Court.
> (2) Repetitive motion. Any ground for relief that was not asserted in a prior postconviction proceeding, as required by subdivision (b)(2) of this rule, is thereafter barred, unless consideration of the claim is warranted in the interest of justice.
> (3) Procedural default. Any ground for relief that was not asserted in the proceedings leading to the judgment of

---

[43] *Richardson v. State*, 3 A.3d 233, 237 (Del. 2010) (citing *Gattis v. State*, 955 A.2d 1276, 1280-81 (Del. 2008)).

[44] *Green v. State*, 238 A.3d 160, 173 (Del. 2020) (citing *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013)); *Starling v. State*, 130 A.3d 316, 325 (Del. 2015).

[45] *Butler v.* State, 95 A.3d 21, 31 (Del. 2014) (citing *Los v. Los*, 595 A.2d 381, 385 (Del.1991)).

[46] Opening Br. Ex. A, at 7.

conviction, as required by the rules of this court, is thereafter barred, unless the movant shows:

(A) Cause for relief from the procedural default; and

(B) Prejudice from violation of the movant's rights.

(4) Former adjudication. Any ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred, unless reconsideration of the claim is warranted in the interest of justice.

(5) Bars inapplicable. The bars to relief in paragraphs (1), (2), and (3) of this subdivision shall not apply to a claim that the court lacked jurisdiction or to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction.[47]

In *Younger v. State*, this Court noted that the procedural requirements of Rule 61 must be applied before consideration of the merits of the underlying claims for postconviction relief.[48] All of the procedural bars are in play; thus, this appeal focuses on the exceptions to the bars.

Swan begins by arguing that Rule 61(i)(1) should not apply because the State engaged in needless litigation in the District Court, which contributed to the delay in addressing the unexhausted claims in Delaware. Swan first raised this argument in a January 10, 2020 filing. Swan did not explain why he waited until the last possible minute—at the end of years-long proceedings, after five days of evidentiary hearings and multiple rounds of

---

[47] *Id.* at 7-8.

[48] 580 A.2d 552, 554 (Del. 1990) (citing *Harris v. Reed*, 489 U.S. 255 (1989)).

filings—to address this argument. As the Superior Court noted, at that late time the State did not have the opportunity to properly respond. Further, Swan offers no authority to support the expansion of the equitable tolling doctrine in the manner that he suggests. Thus, we hold that Swan waived this argument.

Turning to the exceptions outlined in the text of the rules, Rule 61(i)(2) and Rule 61(i)(4) contain an "interest of justice" exception. The interest of justice exception applies when (i) "the previous ruling was clearly in error or there has been an important change in circumstances, in particular, the factual basis for issues previously posed," or (ii) there is an "equitable concern of preventing injustice."[49]

Rule 61(i)(5) provides an exception to the bars of Rule 61(i)(1), (2), and (3) for a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity, or fairness of the proceedings that lead to the conviction. The *Younger* court utilized a conservative approach in interpreting this "fundamental fairness" exception, noting that it is "a narrow one and has only been applied in limited circumstances . . . ."[50] The defendant bears the burden of proving that he or she was deprived of a *substantial* constitutional right.[51]

---

[49] *Weedon v. State*, 750 A.2d 521, 527-28 (Del. 2000) (footnotes and citations omitted); *see also Zebroski v. State*, 12 A.3d 1115 (Del. 2010).
[50] *Younger*, 580 A.2d at 554; *see Bailey v. State*, 588 A.3d 1121, 1130 (Del. 1991).
[51] *Younger*, 580 A.2d at 555; *see Webster v. State*, 604 A.2d 1364, 1366 (Del. 1992).

The majority of Swan's claims for postconviction relief involve allegations that initial postconviction counsel was ineffective for failing to raise claims based on Swan's trial counsel's allegedly deficient performance. A meritorious ineffective assistance of counsel claim that demonstrates a constitutional violation may be considered an exception under Rule 61(i)(5). Conclusory claims of ineffective assistance of counsel, however, do not constitute a miscarriage of justice under Rule 61(i)(5).[52] Substantive claims are necessary for the Court to consider overriding a bar based on ineffective assistance of counsel.[53]

In *Guy v. State*, this Court examined the applicability of old Rule 61's procedural bars to a subsequent motion for postconviction relief based on allegations of ineffective assistance of counsel.[54] This Court held that Rule 61(i)(2) was inapplicable to claims that initial postconviction counsel was ineffective for not raising claims that trial counsel were ineffective.

> This rule recognizes, as the United States Supreme Court recently noted, that in a jurisdiction like Delaware, where ineffective assistance of trial counsel may not be raised on direct appeal, the first postconviction "proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim." Accordingly, when a defendant subsequently claims that his postconviction counsel was ineffective in pursuing his ineffective assistance of trial counsel claims, we hold that those claims must be filed within one year following the conclusion of the defendant's first postconviction proceeding.[55]

---

[52] *Younger*, 580 A.2d at 555.
[53] *Id.*
[54] 82 A.3d 710 (Del. 2013).
[55] *Id.* at 715-16.

Thus, under this Court's ruling in *Guy*, old Rule 61 allows a subsequent postconviction motion if the claims are based on the failure of the initial postconviction counsel to raise ineffective assistance of trial counsel claims, as is the case here. When considering claims that initial postconviction counsel was ineffective for not raising claims that trial counsel was ineffective, Rule 61(i)(1) still applies. *Guy* provides that "the one-year time limitation on a claim of ineffective assistance of postconviction counsel shall begin to run when the defendant's appeal to this Court from the Superior Court's denial of his first motion for postconviction relief is concluded."[56] If no appeal was taken, the one-year time limitation begins to run "within 30 days following the Superior Court's denial of the defendant's first motion for postconviction relief."[57]

When examining ineffective assistance of counsel claims, we apply the well-worn standards announced by the United States Supreme Court in *Strickland v. Washington*.[58] Under *Strickland*, Swan carries the burden of establishing (i) that counsel's representation fell below an objective standard of reasonableness and (ii) that the deficiencies in counsel's representation caused him substantial prejudice.[59]

---

[56] *Id.*

[57] *Id.*

[58] 466 U.S. 668 (1984).

[59] *Green*, 238 A.3d at 174 (citing *Strickland*, 466 U.S. 687-88).

10

The first prong of "the *Strickland* test—frequently referred to as the performance prong—places a heavy burden" on the appellant.[60] The appellant must overcome a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."[61] When reviewing counsel's performance, the court engages in an objective inquiry into "not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'"[62] "The burden of persuasion is on the appellant to show that his counsel's performance was objectively unreasonable, *i.e.*, that no reasonable lawyer would have conducted the defense as the lawyer did."[63] "If an attorney makes a strategic choice after thorough investigation of law and facts relevant to plausible options, that decision is virtually unchallengeable . . . ."[64] The attorney's conduct viewed as a whole is the key analysis under *Strickland*.[65]

The second prong of the *Strickland* test examines whether the defendant has been prejudiced by counsel's conduct.

> To demonstrate prejudice caused by counsel's ineffectiveness, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability means a probability sufficient to undermine confidence in the outcome, a standard lower than more likely than not. The

---

[60] *Id.*

[61] *Id.*

[62] *Burger v. Kemp*, 483 U.S. 776, 796 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665, n.38 (1984)).

[63] *Green*, 238 A.3d at 174.

[64] *Hoskins v. State*, 102 A.3d 724, 730 (Del. 2014).

[65] *Green*, 238 A.3d at 174 (citing *Atkins v. Zenk*, 667 F.3d 939, 945 (7th Cir. 2012)).

likelihood of a different result must be substantial not just conceivable.[66]

Swan also asserts numerous claims that the State failed to produce evidence in violation of requirements established by the United States Supreme Court in *Brady v. Maryland*.[67] In the context of a Rule 61 motion for postconviction relief, this Court considers a meritorious *Brady* claim under Rule 61(i)(5)'s narrow "miscarriage of justice" exception.[68] This Court recently set forth the analysis for evaluating a *Brady* claim:

> Under *Brady* . . . , the State's failure to disclose exculpatory and impeachment evidence material to the case violates a defendant's due process rights. The reviewing court may also consider any adverse effect from nondisclosure on the preparation or presentation of the defendant's case. There are three components of a *Brady* violation: (1) evidence exists that is favorable to the accused, because it is either exculpatory or impeaching; (2) that evidence is suppressed by the State; and (3) its suppression prejudices the defendant. In order for the State to discharge its responsibility under *Brady*, the prosecutor must disclose all relevant information obtained by the police or others in the Attorney General's Office to the defense. That entails a duty on the part of the individual prosecutor to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.[69]

Whether a *Brady* violation occurred often hinges on whether there is prejudice.[70] "Whether suppression of the evidence caused prejudice to the defendant depends on the

---

[66] *Id.* (quoting *Starling v. State*, 130 A.3d 316, 325 (Del. 2015)).

[67] 373 U.S. 83 (1963).

[68] *See Wright v. State*, 91 A.3d at 986-87 (Del. 2014); *Jackson v. State*, 770 A.2d 506, 515-16 (Del. 2001).

[69] *Starling*, 130 A.3d at 332-33 (citing *Wright*, 91 A.3d at 987-88 (quotations and citations omitted)).

[70] *Atkinson v. State*, 778 A.2d 1058, 1063 (Del.2001).

materiality of the evidence."[71] A defendant must show that the suppressed evidence created "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."[72] The suppression of evidence must "undermine [] confidence in the outcome of the trial."[73] This Court enumerated six factors to consider when determining the materiality of the suppressed evidence: (i) favorability; (ii) admissibility; (iii) probative value; (iv) cumulative nature; (v) weight of other evidence; and (vi) deference to the trial judge.[74]

Swan's "Arguments" section of his brief begins with a summary of the "Merits of the Argument."[75] It states, "Swan's conviction and sentencing was unconstitutional due to counsel ineffectiveness, prosecutorial misconduct, due process errors and actual innocence. These errors establish 'cause' to overcome the procedural bars, and warrant conviction reversal."[76] His brief then includes a detailed "Applicable Law" subsection. In that subsection, Swan discusses the procedural bars of Rule 61 and the various exceptions to the procedural bars. He also discusses the applicable law for the consideration of claims of ineffective assistance of counsel, prosecutorial misconduct, and various types of due process violations.[77] The next subsection of the analysis section is called "Meritorious Claims." In

---

[71] *Gray v. State*, 126 A.3d 631, 2015 WL 5926151, *3 (Del. 2015) (TABLE).
[72] *Starling*, 130 A.3d at 333.
[73] *Id.*
[74] *Stokes v. State*, 402 A.2d 376, 380 (Del. 1979).
[75] Opening Br. 4.
[76] *Id.* at 4-5.
[77] *Id.* at 5-13.

that subsection, Swan argues that he is entitled to postconviction relief for 32 reasons (not separately counting subclaims). He specifically discusses each of his 32 claims for postconviction relief; however, Swan fails to mention Rule 61 or any of its exceptions in any of his 32 claims for postconviction relief. Instead, he discusses the merits of the underlying challenge in each section.[78] Thus, in all 32 sections that follow, we make our best effort to determine which exception to the procedural bars Swan is attempting to rely on.

### 1. Jury Foreperson with Incarcerated Brother, a Prior Record, and a Familial Relationship with a Murder Victim

Swan argues that he "was denied his due process to a fair and impartial jury because the trial court failed to inquire into the bias of the jury foreperson," and "prior counsel was ineffective under *Strickland* for failing to raise this issue."[79] The juror reported that a family member was a homicide victim three to four years before Swan's trial and that her brother was incarcerated for a DUI charge at the time of Swan's trial, with three months remaining on his sentence. She did not report that her brother had additional convictions; nor did she disclose her own ten-year-old misdemeanor conviction for offensive touching.[80]

Trial counsel requested follow-up questions regarding the juror's incarcerated brother.[81] The trial court asked three follow-up questions about the juror's brother.[82] Trial

---

[78] *Id.* at 14-73.
[79] *Id.* at 14.
[80] A598-606.
[81] A603-04.
[82] A606.

counsel also requested follow-up questions regarding the juror's family member's murder, which the court denied.[83] During *voir dire*, the juror reported that neither the murder nor her brother's incarceration would affect her ability to be completely fair and impartial in Swan's case. Trial counsel did not challenge the juror for cause or exercise a peremptory strike. In the first motion for postconviction relief, appellate counsel raised issues regarding the jury selection process but not issues about the jury foreperson.[84]

This claim attacks trial counsel and initial postconviction counsel for not raising these issues.[85] But this claim is procedurally barred as untimely under Rule 61(i)(1). This Court affirmed the denial of Swan's first motion for postconviction relief in September 2011.[86] Thus, under *Guy*, this claim must have been brought in September 2012 to be timely. Swan's second postconviction motion was not filed until October 2013.[87]

Presumably, Swan argues that the miscarriage of justice exception of Rule 61(i)(5) applies because his trial counsel's ineffectiveness for failing to adequately investigate and discover potential juror bias amounted to a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the trial. But Swan fails to show that his counsel's actions were objectively unreasonable or prejudicial under *Strickland*.

---

[83] A603-04.

[84] A3657-60.

[85] In the vast majority of Swan's ineffective assistance of counsel claims, he fails to mention initial postconviction counsel. Nonetheless, we assume that he also necessarily argues that initial postconviction counsel was ineffective for failing to raise any claims that were not raised.

[86] A4938.

[87] A5358.

First, although the impartiality of jurors is essential to the proper functioning of a jury and must be protected,[88] "the trial judge is in a unique position to evaluate jurors' assurances of impartiality."[89] Nothing supports Swan's vague assertion that the juror's step-niece's murder three to four years before Swan's trial "rendered [the juror] subject to the Office of the Attorney General."[90] Swan cites *Knox v. State*[91] as support for his contention. However, this case is distinguishable from *Knox* because the potential juror in *Knox* was a robbery victim whose interests aligned with the attorney general's office in a pending criminal trial. Further, the trial judge in *Knox* did not conduct a *voir dire* of the juror and was not able to personally assess any assurances of impartiality.[92] Here, the juror was not the victim of a crime that was currently being prosecuted, and the court assessed her reliability during *voir dire*.

Second, "for the failure of a juror to answer accurately a question on *voir dire* to constitute reversible error, a party must . . . demonstrate that a juror failed to honestly answer a material question on *voir dire*" and "show that a correct response would have provided a valid basis for a challenge for cause."[93] Although the juror incorrectly answered two material *voir dire* questions, correct responses would not have provided a valid basis for a challenge

---

[88] *Schwan v. State*, 65 A.3d 582, 587-88 (Del. 2013).
[89] *Hughes v. State*, 490 A.2d 1034, 1041 (Del. 1985).
[90] Opening Br. 14-15.
[91] 29 A.3d 217 (Del. 2011).
[92] *Knox*, 29 A.3d at 221-22.
[93] *Banther v. State*, 823 A.2d 467, 484 (Del. 2003) (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 555-56 (1984)).

16

for cause. The juror "would not be disqualified from jury service simply because she has relatives with a criminal record."[94] And a misdemeanor conviction would not have resulted in disqualification under 10 *Del. C.* § 4509(b)(6). Further, this Court has "favorably cited the proposition that a juror's inaccurate response to a *voir dire* question based on a factual inaccuracy rather than dishonesty did not warrant a new trial."[95] The juror's testimony during the 2019 evidentiary hearing revealed her genuine confusion on the meaning of the question concerning her prior arrest and her belief that she was truthful about her brother.[96]

Thus, we do not believe that trial counsel's failure to take further action was objectively unreasonable or that Swan suffered sufficient prejudice. Further, Swan does not sufficiently show any other colorable claim of a constitutional violation that undermined the fundamental fairness of the trial. As such, Swan's claim is time barred under Rule 61(i)(1), and the exception in Rule 61(i)(5) does not save this claim.

### 2. Proctor Note

Swan next contends that trial counsel was ineffective for failing to object to the admission of certain evidence. On February 16, 2000, the morning of the preliminary hearing, Swan and Norcross were in separate holding cells in the Kent County Courthouse.[97] Richard Edwards, who was being held in lockup with Swan, testified that he witnessed

---

[94] *Smallwood v. State*, 2002 WL 31883015, at *2 (Del. Dec. 26, 2002).
[95] *Id.* at *1 (citing *Banther*, 783 A.2d at 1291).
[96] A8913-18.
[97] A4945.

17

Ronald Proctor, another inmate, drafting a letter on Swan's behalf.[98]  Edwards stated that he observed Swan talking to Proctor as Proctor was writing the letter.[99]  Edwards then testified that Proctor and Swan asked him to carry the note to Norcross, who was housed around the corner.[100]  Edwards successfully delivered the letter to Norcross, but correctional officers immediately confiscated the letter.[101]  The note, which was admitted into evidence, contained the phone number of Margaret Tucker, Swan's grandmother, and it instructed Norcross to not trust his lawyer, to keep quiet, and if he talked, to say that he lied about any involvement in Warren's death.[102]  Swan contends that this note improperly established a connection between Norcross, who had admitted to the murder, and Swan.

Swan argues that trial counsel was ineffective for failing to object to the entry of the note from a non-testifying witness as hearsay and as a violation of the Confrontation Clause. Swan also argues that trial counsel was ineffective for failing to call Proctor as a witness to refute the State's theory.[103]  Initial postconviction counsel raised this claim in connection with the first motion for postconviction relief, and the Superior Court rejected it.  Swan does not address counsel's failure to raise this issue in the appeal related to the initial motion for postconviction relief.  Instead he seems to argue that the claim is not barred under any of the

---

[98] A2081-82.
[99] A2082.
[100] *Id.*
[101] A2083-84.
[102] A2075; A2137.
[103] Opening Br. 17.

bars of Rule 61(i) because either the interest of justice exception or the miscarriage of justice exception applies.

Swan seems to argue that bars under Rule 61(i)(2) and Rule 61(i)(4) do not apply because he proffered new evidence under the interest of justice exception.[104] Specifically, in 2015, Proctor executed an affidavit in which he stated that the letter was his idea and motivated by his dislike of Norcross's attorney.[105] But this argument fails because the 2015 affidavit executed by Proctor is very similar to his original 2001 affidavit, which articulated the same points.[106] Thus, Swan fails to identify a change in circumstances that would support the interest of justice exception.

Swan also seems to argue that the miscarriage of justice exception of Rule 61(i)(5) applies because his trial counsel was constitutionally ineffective for not objecting to the entry of the Proctor note as hearsay and violative of the Confrontation Clause. Presumably, Swan also argues that his initial postconviction counsel was ineffective for failing to raise the argument on appeal of the initial motion for postconviction relief. As the Superior Court noted, "[d]efense counsel strenuously objected to admission of the note on grounds of relevance and was overruled by this Court."[107] But, "[e]ven if counsel's conduct had been professionally unreasonable, [Swan] cannot show prejudice, that is, he cannot show a

---

[104] Opening Br. 18.
[105] A6669-72.
[106] *Compare* A6669-72 *with* A3822-28.
[107] A4908-09.

reasonable probability that the outcome of the trial would have been different without the admission of the note or, in the alternative, with the testimony of Proctor."[108] Swan "argues that the note demonstrates a connection between Norcross and Swan and that the jury could have relied on this to find Swan guilty[,]" but "[t]he State's case included other more convincing evidence of the connection between the two men, such as the fact that they were acknowledged friends, lived and worked together for periods of time, moved to Canada together and had mutual friends."[109] Thus, we agree with the Superior Court's conclusion that this argument does not meet the *Strickland* standard.[110]

Swan's argument that trial counsel was ineffective for failing to introduce Proctor as a witness to refute the State's theory also fails. In their affidavit, trial counsel admitted that they "chose not to call Ronald Proctor to testify at trial."[111] "After numerous meetings with Proctor, trial counsel concluded that Proctor would be an unreliable witness . . . [and] could potentially prejudice defendant."[112] "If an attorney makes a strategic choice 'after thorough investigation of law and facts relevant to plausible options,' that decision is 'virtually unchallengeable' . . ."[113] Thus, the decision not to call Proctor as a witness also fails to meet the first prong of the *Strickland* standard.

---

[108] *Id.*
[109] *Id.*
[110] *Id.*
[111] A4768.
[112] *Id.*
[113] *Hoskins v. State*, 102 A.3d 724, 730 (Del. 2014) (citing *Ploof*, 75 A.3d at 852).

20

In sum, Swan's challenges based on the Proctor note are barred under Rule 61, and his changed circumstances and ineffective assistance of counsel arguments do not save these challenges.

### 3. Norcross's Criminal History and Mental Health

Norcross was not proffered as a witness at Swan's 2001 trial, but several of his statements were admitted into evidence over hearsay objections. Swan faults trial counsel for not discovering and using evidence of Norcross's criminal history and mental health background to impeach his hearsay statements that were admitted into evidence.

This claim is untimely under Rule 61(i)(1), and Swan's ineffective assistance of counsel arguments do not constitute a miscarriage of justice under Rule 61(i)(5) because trial counsel's actions were not objectively unreasonable or prejudicial under *Strickland*. First, the jury knew Norcross was a criminal. The jury was aware that Norcross (i) was a burglar and a thief, (ii) had solicited a co-worker to join him and Swan to rob a drug dealer, (iii) was caught committing fraud at his job by changing the time clock, and (iv) gave changing stories about his role in Warren's death. Any additional information would have been cumulative at best.

Second, Swan's arguments that competent counsel would have introduced evidence of Norcross's mental health background to impeach his statements are not convincing. Although Swan does not point to specific medical evidence in his brief, we assume he is referring to alleged mental health conditions mentioned in the 2013 motion for

21

postconviction relief.[114]   But this argument falls short.   The Superior Court correctly determined that this evidence was inadmissible lay opinion testimony.[115]   Therefore, Swan's challenges are barred by Rule 61(i)(1), and miscarriage of justice exception does not save these challenges.

### 4.   Cross-Examination of Detective to whom Norcross Confessed

Swan claims that trial counsel was ineffective for failing to sufficiently cross-examine the detective who obtained the confession from Norcross after falsely telling Norcross that Swan implicated Norcross.  Swan further faults initial postconviction counsel for failing to assert this claim.

This claim is barred as untimely under Rule 61(i)(1).  Presumably, Swan argues that the exception of Rule 61(i)(5) applies because his counsel was so constitutionally ineffective that there was a miscarriage of justice that undermined the fundamental fairness of his trial.  But trial counsel's actions, and initial postconviction counsel's failure to challenge those actions, were not objectively unreasonable under the first prong of *Strickland*.

Generally, the voluntariness of a statement is analyzed by a "totality of circumstances" test.[116]  Nothing in the record supports an argument that the officers coerced

---

[114] A5386.

[115] A37.

[116] *Roth v. State*, 788 A.2d 101, 107-08 (Del. 2001) (quoting *Martin v. State*, 433 A.2d 1025, 1032 (Del. 1981)); *see State v. Rooks*, 401 A.2d 943, 948–49 (Del. 1979).

Norcross into implicating Swan.[117]  Swan only points to the officer's lie to Norcross that Swan had implicated Norcross as the coercive act.  "We do not find [the detective's] untruth . . . to constitute sufficient trickery to overcome [Norcross's] will."[118]  The lie "was not sufficient to prevent [Norcross] from making a rational choice of his own free will."[119] Further, this challenge does nothing to rebut the fact that Norcross had already told three other people that he and Swan were involved in the crime.[120]  Based on the record before us, we are not convinced by Swan's argument.  Trial counsel's cross examination of the detective was not objectively unreasonable, and initial postconviction counsel was not ineffective for failing to challenge trial counsel's actions.  Thus, the claim is barred by Rule 61(i)(1), and Swan has not identified a miscarriage of justice that would save this claim.

### 5.    Norcross Recantation Evidence

Swan argues that trial and initial postconviction counsel were ineffective for failing to proffer or properly argue that Norcross, allegedly twice, recanted his four statements all implicating Swan in the Warren murder. Specifically, in 2000, the day after his arrest, Norcross told a correctional officer that he killed a person who was going to kill three

---

[117] Opening Br. Ex. A, at 39.
[118] *Bayard v. State*, 518 A.2d 682, 691 (Del. 1986).
[119] *Id.*
[120] A1725-34 (testimony of Adam Howell); A1798-800 (testimony of Gina Ruberto); A1898-906 (testimony of Bridget Phillips).

people.[121]  Norcross further revealed he had not been convicted of that crime.[122]  Swan contends that trial counsel erred by not raising the 2000 statement.

In 2005, Norcross sent a letter recanting his statements implicating Swan.[123]  At the 2006 hearing on Swan's motion for a new trial, Norcross testified concerning this recantation.  Norcross testified that a man named Wayne was his actual accomplice in the Warren murder.[124]  The Superior Court ultimately found this recantation lacked credibility, as Norcross did not give any corroborating details about Wayne that could verify his story.[125]  Norcross also denied implicating Swan, which contradicted the recorded statement to the Delaware State Police.[126]  Swan contends that initial postconviction counsel was ineffective for not raising either the 2000 statement, the 2005 letter, or arguing that trial counsel was ineffective.

These claims are barred by Rule 61(i)(1) as untimely.  Presumably, Swan argues that the exception of Rule 61(i)(5) applies because his trial and postconviction counsel were so constitutionally ineffective that there was a miscarriage of justice that undermined the fundamental fairness of his trial.  But Swan failed to prove that he was prejudiced under the second prong of *Strickland* by trial counsel's or postconviction

---

[121] A6921.
[122] *Id.*
[123] A3478.
[124] A3479.
[125] A3478-502.
[126] Opening Br. Ex. A, at 41.

counsel's actions. The 2000 statement he contends should have been introduced is, at best, vague. But, even if the 2000 statements had been introduced, there remained Norcross's out of court statements to Matthew Howell,[127] Gina Ruberto,[128] Bridget Phillips,[129] and Sergeant Charles Brown,[130] all of which implicated Swan.[131] The 2005 statements and 2006 testimony, likewise, were extremely vague. Further, Norcross offered no details about Wayne. Thus, we find no error in the Superior Court's holding that this claim is barred as untimely, and Swan has failed to identify a miscarriage of justice that would save this claim.

### 6. Sergeant Evans Lay Opinion Testimony

Swan argues that trial counsel was ineffective for failing to object to the admission of Sergeant John Evans's lay opinion testimony regarding the location of Tina Warren's purse.[132] Evans testified at trial concerning the purse he found at Eastern Shore Concrete.[133] He opined that the stolen purse had been thrown from inside the fence of Eastern Shore Concrete because he found a Bell Atlantic calling card inside the fence that belonged to Tina Warren while he found her purse, credit cards, and checkbook outside the fence.[134]

---

[127] A1722-66.
[128] A1797-824.
[129] A1890-948.
[130] A1967-69; A1979; A1987-2006.
[131] A1964-90.
[132] Opening Br. 29.
[133] A1334-39.
[134] A1338; A4941.

This claim is untimely under Rule 61(i)(1), and Swan's ineffective assistance of counsel arguments do not constitute a miscarriage of justice under Rule 61(i)(5). First, counsel objected to this testimony, and the objection was overruled.[135] Second, the officer's conclusion is a commonsense conclusion, rather than an impermissible lay opinion. Third, another employee of the plant testified that Norcross told him that he threw the purse into the woods.[136] Thus, Swan failed to show a miscarriage of justice through an ineffective assistance of counsel claim because counsel's actions were not objectively unreasonable, and Swan suffered no prejudice due to counsel's actions. As a result, the Superior Court did not err in determining that this claim is procedurally barred under Rule 61(i)(1).

### 7.    The Superior Court's Instructions on Jury Notes

On June 6, 2001, the Superior Court received three notes with questions from the jury. Two asked about ballistics; one asked about the layout of the Warren home.[137] At an office conference, the Superior Court read the notes to counsel and indicated he would not answer these questions.[138] The court then addressed the jury as follows:

> I have read those questions to the attorneys in open court. They are aware of what those questions are and it will be up to counsel to answer them, if they can, or provide explanations for why they cannot answer them or do nothing at all. But that's the

---

[135] A1336-38.
[136] A1730.
[137] A1127-28.
[138] A1129.

26

situation. Counsel is aware of it and it's up to counsel to act on them.[139]

Swan contends this instruction erroneously shifted the burden onto Swan and that trial counsel was ineffective for failing to object. Presumably, Swan also argues that initial postconviction counsel was ineffective for failing to raise this claim in the first motion.

This claim is procedurally barred under Rule 61(i)(1) as untimely, and Rule 61(i)(5) does not provide an exception because Swan does not assert a colorable claim that there was a miscarriage of justice. The Superior Court's instructions merely restated the fact that counsel, for both the State and defense, would have to answer those questions. The court said nothing that altered its instruction from the previous day that the defendant had no burden to prove his innocence. Thus, counsel's failure to object was not objectively unreasonable or prejudicial, and there was no miscarriage of justice that undermined the fundamental fairness of the trial. As such, this claim is barred under Rule 61(i)(1) as untimely.

### 8. Testimony of the Medical Expert

Dr. Judith Tobin, the autopsy physician, testified that Kenneth Warren was shot four times and died from a shot to the head.[140] Near the conclusion of her testimony, she summarized her statements as follows:

> So I felt that most likely number 1 and 2 came in rapid succession, because the wounds were close together and they

---

[139] A1133.
[140] A1139-1145.

were parallel. And I would say that he was in an upright position, because it come [sic] from the side like that. He could not have been lying down or anything like that, unless a shooter was lying down on the floor.

Now, number 3 was fairly close because, as I told you, because of the tattooing, and number 4 was on the top of the head. So I felt that the victim was down when he sustained that wound, because the shooter couldn't have been up above him. And it went down and its path was down in the body.

So, subsequently, to summarize, I feel that 1 and 2 came first. 1 probably first before 2. And that number 3 probably was next, and number 4 was last.[141]

Swan contends that trial counsel was ineffective for failing to object to Tobin's opinion on the trajectory of the bullets, the sequence of the wounds, and the location of the decedent's body for each shot. Swan also faults trial counsel for not proffering a witness to refute Tobin's testimony. Presumably, initial postconviction counsel was ineffective for failing to raise these claims in the initial motion.

This claim is barred as untimely under Rule 61(i)(1), and Swan's ineffective assistance of counsel arguments do not constitute a miscarriage of justice under Rule 61(i)(5). Swan's counsel's failure to object to Tobin's testimony does not implicate a miscarriage of justice because the bullet trajectories were not a crucial issue. The importance of Tobin's testimony was to explain that Warren was shot four times with two different caliber bullets and to explain the cause of death. Because no prejudice resulted from the allegedly objectionable testimony, counsel was not ineffective under *Strickland*, and Swan

---

[141] A1159.

has not identified a miscarriage of justice that undermined the fundamental fairness of the trial. Thus, the claim is barred as untimely under Rule 61(i)(1).

### 9. Ballistic Expert's Falsified Credentials

At trial, the state called ballistic expert Joseph Kopera to testify about the type of bullets that were used in the murder of Warren. Kopera was employed with the Maryland State Police Laboratory.[142] He testified that Warren had been shot with two different bullets, a .357 caliber and a .40 caliber.[143] In 2007, it was discovered that Kopera had falsified his educational background.[144] Kopera committed suicide shortly after this revelation.[145] Swan argues that the State failed to disclose this impeachment evidence and that his trial counsel failed to investigate, discover, and use Kopera's background as impeachment evidence against Kopera during the trial. Presumably, initial postconviction counsel also was ineffective for failing to discover and raise this issue.

This claim is barred as untimely under Rule 61(i)(1), and Swan's allegations of ineffective assistance of counsel do not constitute a miscarriage of justice under Rule 61(i)(5). Nothing suggests that a reasonable investigation would have uncovered Kopera's fraud. After all, Kopera was engaged in affirmative deception, which, according to Swan,

---

[142] A1071-72.
[143] A1093-95.
[144] A9494.
[145] *Id.*

29

he supported with a forged transcript. Thus, we cannot say that trial counsel was objectively unreasonable under *Strickland* for failing to discover this affirmative deception.

Additionally, in an effort to address this claim head on, in June, 2019, the Superior Court ordered the bullets to be removed from evidence and gave both parties the opportunity to re-examine the bullets.[146] The State seized on this opportunity; the defense did not.[147] The results of the State's examination confirmed the testimony the jury heard: two types of bullets were found at the scene.[148]

Presumably, Swan also argues that there was a miscarriage of justice because the State withheld material impeachment evidence regarding a key government witness. While Swan is correct that this is impeachment evidence, nothing suggests that the State knew these records were falsified or that a reasonable investigation would have revealed Kopera's deception. Thus, Swan has not identified any suppression on the State's part. As such, Swan also fails to sufficiently state a miscarriage of justice based on the State's obligation to disclose impeachment evidence under *Brady* and its progeny.

Thus, this untimely claim is barred by Rule 61(i)(1) and is not saved by Rule 61(i)(5).

---

[146] A8776.
[147] A9495.
[148] A9075

30

### 10. Detective Marvel's Trajectory Analysis

At trial, the State called Detective Keith Marvel as the crime scene investigation witness.[149] Marvel was responsible for documenting the crime scene and collecting physical evidence.[150] He returned to the scene nine months after the murder to conduct a bullet trajectory analysis.[151] Marvel concluded that a bullet that was shot through the patio door struck Warren in the back.[152] Swan contends trial counsel failed to present "readily available evidence" that Marvel's analysis was unreliable,[153] and initial postconviction counsel failed to raise this claim.

This claim is procedurally barred as untimely under Rule 61(i)(1), and Swan's claims of ineffective assistance of counsel do not constitute a miscarriage of justice under Rule 61(i)(5) because, as the Superior Court concluded, Swan does not show that his counsel's failure to object was objectively unreasonable under the first prong of the *Strickland* analysis.

> The reality of this case and the trial was not so much how the murder went down, but who were the players. Was it Swan? That is where defense counsel focused their energy. I do not find that trial counsel were ineffective for not objecting to the trajectory evidence. If they were ignorant of potential flaws I still do not fault them as they had to marshal their time and

---

[149] A1164.
[150] A1164-65.
[151] A1199-1211.
[152] A1211.
[153] Opening Br. 36.

31

energy, and nobody has the luxury of hiring experts at every turn of the case.[154]

Similarly, "the *Strickland* prejudice prong has [not] been established. . . . [T]his case was not about how Mr. Warren was murdered[,] but it was about who was present. Therefore, the trajectory evidence was not critical at all."[155]

We find no error in the Superior Court's analysis. Thus, Swan has failed to show that there was a miscarriage of justice due to a violation of constitutional rights that undermined the fundamental fairness of the trial, and this claim is barred under Rule 61(i)(1).

### 11. Cumulative Forensic Evidence

Swan combines the averments of claims eight, nine, and ten to argue that trial counsel was ineffective for the cumulative effect that these alleged "deficiencies" produced. "Cumulative error must derive from multiple errors that caused 'actual prejudice.'"[156] This claim is barred under Rule 61(i)(1) for the same reasons the individual claims are barred. Rule 61(i)(5) also is inapplicable. Swan has failed to prove that any single claim has created a miscarriage of justice due to a violation of constitutional rights that undermined the fundamental fairness of the trial; the combination of claims fares no better. Thus, the claim of cumulative error fails.

---

[154] Opening Br. Ex. A, at 54.

[155] *Id.*

[156] *Michaels v. State*, 970 A.2d 223, 231-32 (Del. 2009) (citing *Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir.2008)).

### 12. Norcross Hearsay Claims

Swan next contends that trial counsel failed to adequately object to the admission of Norcross's hearsay statements.[157] This claim has been litigated since 2001. Before trial, Swan's counsel filed a motion to exclude numerous out-of-court statements made by Norcross.[158] After an evidentiary hearing, the Superior Court partially granted the motion and only allowed heavily redacted versions of Norcross's pre-crime statements to be admitted.[159] This was one of the central issues on direct appeal, and this Court affirmed the Superior Court.[160] This issue was raised in the initial postconviction motion where it was relitigated, and the statements were ruled to have been properly admitted.[161] Thus, this claim is barred under Rule 61(i)(4), and Swan's challenges to the reliability of Norcross's statements (discussed above) do not constitute a changed circumstance under the interest of justice exception.

### 13. Improper Closing Argument

Swan contends that trial counsel was ineffective for not objecting to three prosecutorial remarks in closing argument and a fourth rebuttal reference to a videotape of Swan kickboxing. Presumably, Swan also argues that initial postconviction counsel was

---

[157] Opening Br. 39.
[158] A5.
[159] A6.
[160] *Swan*, 820 A.2d at 352-54.
[161] *See State v. Swan*, 2010 WL 1493122, at *3, *9 (Del. Super. Ct. Apr. 8, 2010); *see also Swan*, 28 A.3d at 384-385.

ineffective for failing to raise any of these arguments in the initial motion for postconviction relief. We affirm the Superior Court's ruling on each point.

First, Swan contends that trial counsel was ineffective for failing to object to allegedly improper prosecutorial introduction of victim impact evidence.[162] Specifically, Swan claims statements that Warren's "friends and relatives lost a good man, a good-hardworking, honest man" or that Warren was "industrious, hard-working, a good citizen, a good Kent Countian," were improper during the guilt phase.[163] This claim is procedurally barred by Rule 61(i)(4), as this Court affirmed the use of such phrases on direct appeal.[164] Swan fails to identify any changed circumstance under the interest of justice exception.

Second, Swan argues that during the guilt phase, the State improperly commented that "while Mr. Warren was in his home, little did he know what evil lurked outside."[165] Swan contends that the State impermissibly implied that Swan was evil.[166] This claim is barred by Rule 61(i)(1) as untimely. Presumably, Swan argues that there was a miscarriage of justice under Rule 61(i)(5) because his constitutional right to effective assistance of counsel was violated when trial counsel failed to object and initial postconviction counsel failed to raise this claim. But as the Superior Court ruled, while "the word 'evil' can be inflammatory regardless of how it is framed, in this case, the State's

---

[162] Opening Br. 41-42.
[163] *Id.* at 42.
[164] *Swan*, 820 A.2d at 356; *see also Gattis v. State*, 637 A.2d 808, 820-21 (Del. 1994).
[165] A2849.
[166] Opening Br. 42.

34

reference to 'what' evil lurked outside is not calling Swan evil. It is more of a foreshadowing of pending doom."[167] We agree with the Superior Court's conclusion and do not think counsel was objectively unreasonable for failing to object. Thus, Rule 61(i)(5) does not save this claim.

Third, Swan asserts that trial counsel failed to object to improper statements of proof and the jury's role.[168] In closing, the prosecution commented that "[t]he standard of proof in a criminal case is proof beyond a reasonable doubt," and then stated, "Remember, your job is to search for the truth, not doubt."[169] Swan cites *Thompson v. State*[170] and *Boatswain v. State*[171] in support of his argument.

This claim is barred as untimely under Rule 61(i)(1), and Swan fails to identify a miscarriage of justice under Rule 61(i)(5). Swan is correct in stating that the burden of proof is an essential issue that goes "to the heart of any criminal case."[172] This Court has warned prosecutors to "not disparage the 'reasonable doubt' standard that governs the jury's determination of guilt."[173] For example, in *Thompson*, the prosecutor stated, "The State asks

---

[167] Opening Br. Ex. A, at 60.
[168] Opening Br. 42-43.
[169] A9504.
[170] 2005 WL 2878167 (Del. 2005).
[171] 2005 WL 1000565 (Del. 2005).
[172] *Hunter v. State*, 815 A.2d 730, 738 (Del. 2002).
[173] *Id*. at 732.

that you go back not seeking to find reasonable doubt, but to seek the truth."[174] This Court held that such comments were improper.[175]

We believe that the State's comment here was also improper. The State should not have said, "Remember, your job is to search for the truth, not doubt." However, even though the remark was improper, the misconduct must prejudicially affect Swan's right to a fair trial to warrant a new trial. *Hughes v. State*[176] requires the application of a three-pronged test to determine whether an improper prosecutorial remark prejudiced the defendant in a way that warrants a new trial. The court must consider

> [1] the closeness of the case, [2] the centrality of the issue affected by the (alleged) error, and [3] the steps taken to mitigate the effects of the error." In *Hunter v. State*, this Court added a fourth prong: whether "the prosecutor's statements are repetitive errors that require reversal because they cast doubt on the integrity of the judicial process.[177]

Here, even though the state's statement was improper, Swan did not suffer substantial prejudice to warrant a new trial. As noted by the Superior Court,

> At the beginning of Swan's trial [the court] informed the jury that the State had the burden to prove the defendant guilty beyond a reasonable doubt and the defendant had no burden of proof whatsoever. At the close of the case, the jury was instructed on reasonable doubt by [the court], including the following: "Reasonable doubt does not mean a vague or speculative doubt or a mere possible doubt . . . doubt that a fair, reasonable, and intelligent juror would honestly entertain after a

---

[174] 2005 WL 2878167, at *2.
[175] *Id.*
[176] 437 A.2d 559 (Del. 1981).
[177] *Thompson*, 2005 WL 2878167, at *2 (quoting *Hunter*, 815 A.2d at 733).

36

careful and conscientious consideration of all the evidence." In Swan, the State's inappropriate remark was bookended before and after with the correct standard of proof being beyond a reasonable doubt.[178]

There can be little doubt that the burden of proof for determining guilt is a central issue, and here, because there was no objection, there was no affirmative curative instruction or other timely mediation efforts by the court. However, this is not a close case; there was a substantial amount of evidence against Swan. Further, the comment was bookended by instructions from the judge stating the correct standard. Additionally, the defense responded to the State's comments, "If you search for the truth you are going to find reasonable doubt."[179] As such, we affirm the Superior Court's ruling that Swan did not suffer prejudice from the State's improper statements or trial counsel's failure to object. As a result, there is no showing that the miscarriage of justice exception applies, and this claim is barred by Rule 61(i)(1).

Finally, Swan contends trial counsel was ineffective for failing to object to the State's suggestion that "one needs to be 'aggressive' to commit this 'type of crime' and that Swan's history of kickboxing was powerful evidence of his aggressive propensity."[180] This claim is barred by Rule 61(i)(1), and Swan fails to identify a miscarriage of justice under Rule 61(i)(5).

---

[178] Opening Br. Ex. A, at 64.
[179] A2923.
[180] Opening Br. 44.

37

The prosecutor stated, "[n]o question he's aggressive. What type of crime was this? Someone had to be awful doggone aggressive crashing through those doors like Tina said, right? Absolutely."[181] This argument borders the line of impermissible, as evidence of being a kickboxer is a far cry from committing murder. However, we do not find that Swan suffered prejudice. The prosecution was not arguing that Swan's kickboxing evidenced his propensity for murder but was arguing that Swan possessed the strength to gain entrance to the Warren's home through the glass patio door. Thus, counsel was not ineffective for not objecting, and Swan has not identified any other constitutional violation that would constitute a miscarriage of justice under of Rule 61(i)(5). As such, the Superior Court did not err in finding that this claim is barred by Rule 61(i)(1).

### 14. Inmate Edwards's Fear

Next, Swan contends that trial counsel was ineffective for failing to object to Edwards's testimony that he was concerned about his safety in prison as a result of testifying for the State.[182] Presumably, Swan also argues that initial postconviction counsel was ineffective for failing to raise this claim.

This claim is procedurally barred as untimely under Rule 61(i)(1), and Swan's claims of ineffective assistance of counsel do not constitute a miscarriage of justice under Rule 61(i)(5).

---

[181] A2951.
[182] Opening Br. 46.

38

Before Edwards's testimony, the defense objected to the introduction of a written agreement between the State and Edwards, which indicated that if Edwards testified truthfully, he would be transferred to a different facility.[183] The State sought to introduce this agreement into evidence, but the Superior Court barred its admission as improper. The court ruled that the defense could introduce the evidence, but the court noted that doing so may open the door on redirect. Defense counsel did ask if Edwards was given the opportunity to transfer.[184] The State, on redirect, asked Edwards what his life would be like if he stayed at his current facility now that inmates knew he was testifying for the State.[185] Edwards stated,

> I would be in constant fear of my life. As a matter of fact, when I was just downstairs, just now, Mr. Proctor is in the first cell that I was talking about earlier, and he asked the other inmates in there if I was in the cell at the time. Nobody happened to know me and I kept my mouth shut and didn't let nobody know what my name was. As I was walking out, they were all hollering, calling me a snitch, they were going to do this to me, that to me. If I go back to DCC, I'm in a minimum-security facility. I have one of the smaller sentences as far as time with most of the guys in there, most of them are doing life sentences, fifteen, twenty, thirty-five, forty years. They feel they have nothing to lose. They don't like people who testify to begin with. I would be in fear of my life.[186]

Swan contends that a reasonable lawyer would have objected to this testimony because "it portrayed Swan as a dangerous man . . . ."[187] We disagree. This response is

---

[183] A2921.
[184] A2093.
[185] A2108.
[186] A2108-09.
[187] Opening Br. 46.

merely about how other inmates treat a "snitch," not about a fear of Swan. Thus, trial counsel's failure to object was not objectively unreasonable under the first prong of *Strickland* and did not deprive Swan of any constitutional right that resulted in a miscarriage of justice. As such, the claim is barred under Rule 61(i)(1).

### 15. Edwards's Impeachment Evidence

### and

### 16. Edwards's Carjacking Conviction

Swan's averments under these sections are closely related to the contentions of section 26 and will be addressed there.

### 17. Edwards's Impeachment

Swan next argues that trial counsel was ineffective for not impeaching Edwards with additional criminal conviction information and his mental health history.[188] Presumably, Swan also argues that initial postconviction counsel was ineffective for failing to raise this claim.

This claim is procedurally barred as untimely by Rule 61(i)(1), and Swan's ineffective assistance of counsel claims do not constitute a miscarriage of justice under Rule 61(i)(5). The record shows that trial counsel cross-examined Edwards and elicited damaging information, such as his conviction of burglary of his parents' house where

---

[188] *Id.* at 49.

40

he stole his mother's jewelry.[189] Defense also inquired about kidnapping and robbery convictions.[190] Thus, there is no showing that counsel's conduct was objectively unreasonable under the first prong of *Strickland*. Further, there is no prejudice under the second prong of *Strickland* because counsel elicited damaging testimony concerning Edwards's criminal history that the jury could weigh. Evidence of more criminal conduct, though probative, would have been cumulative. As to the mental health information, nothing suggests that any reasonable investigation would have revealed Edwards's mental health history. Therefore, this claim is barred by Rule 61(i)(1), and the exception of Rule 61(i)(5) does not apply.

### 18. Rathel Lay Opinion Testimony

Swan contends trial counsel was ineffective for failing to object to the lay opinion testimony of Deborah Rathel, the stepmother of Swan's ex-girlfriend, about her confrontation with Swan about his shoulder injury. It appears that trial counsel did object to the admission of this evidence.[191] Regardless, to the extent Swan's claim is that counsel's objections were not better or more frequent, this claim is barred as untimely under Rule 61(i)(1).[192] Swan fails to assert any colorable claims of a miscarriage of justice because of a

---

[189] A9513-14.
[190] *Id.*
[191] A1649-59; A1709.
[192] A1648-59.

constitutional violation that undermined the fundamental fairness of the trial. Thus, this claim is barred under Rule 61(i)(1).

### 19. Stewart Impeachment

At trial, Michael Stewart testified for the defense to establish an alibi that Swan was at Tiberi's Gym on the day of the murder. The State then called Stewart's manager as a rebuttal witness to testify that Stewart was a people pleaser.[193] Additionally, after Stewart testified, the prosecutors and a detective visited Stewart. The State then had Stewart, and the detective that visited, testify on rebuttal. Swan contends that trial counsel was ineffective for failing to object to lay opinions offered by rebuttal witnesses and the impermissible tactics the State used to undermine Stewart's testimony. Presumably, initial postconviction counsel was ineffective for failing to raise this claim in the initial motion.

This claim is barred as untimely under Rule 61(i)(1). Swan's claims of ineffective assistance of counsel do not constitute a miscarriage of justice under Rule 61(i)(5). Because Stewart's own rebuttal testimony undermined Stewart's direct testimony,[194] Swan cannot show prejudice under the second prong of the *Strickland* analysis. Thus, this claim is barred by Rule 61(i)(1).

---

[193] Opening Br. Ex. A, at 78.
[194] *Id.* at 79.

### 20. Brittingham Testimony

Swan argues that trial counsel was ineffective for not objecting to and moving to strike the testimony of Charles Brittingham, who found Tina Warren's wallet in a wooded area behind the concrete plant where he worked with Swan.[195] Swan contends that the State asked Brittingham if Swan left his employment after the wallet and purse were found, improperly inferring that Swan left because incriminating evidence was found.[196] Swan faults trial counsel for not objecting or moving to strike the testimony as improper. Presumably, Swan also argues that initial postconviction counsel was ineffective for failing to raise this claim in the first motion for postconviction relief.

This claim is barred as untimely under Rule 61(i)(1), and Swan's claims of ineffective assistance of counsel do not constitute a miscarriage of justice under Rule 61(i)(5). Even assuming counsel should have objected to the statement, Swan failed to establish prejudice under the second prong of *Strickland* because other State witnesses and Swan's employment records informed the jury that Swan was laid off when the plant closed in December 1996, not immediately after or because the wallet was found.[197] As such, this claim is barred by Rule 61(i)(1).

---

[195] *Id.* at 80.
[196] *Id.*
[197] A6029.

### 21. Swan's Texas Medical Records

Swan argues that both trial counsel and initial postconviction counsel were ineffective for mishandling his Texas medical records.[198] Trial counsel is faulted for not obtaining Swan's medical records from the time he was incarcerated in Texas, while postconviction counsel is faulted for not presenting expert explanation of the medical records presented.[199] These records include a radiologist report related to an X-ray taken of Swan's shoulder at or near where the scar is located.[200] The report states that "the left shoulder . . . is somewhat deformed to suggest previous trauma or surgical removal."[201]

This claim is barred as untimely under Rule 61(i)(1). Presumably, Swan argues that the exception of Rule 61(i)(5) applies because his counsel was so constitutionally ineffective that there was a miscarriage of justice that undermined the fundamental fairness of his trial. However, trial counsel's failure to proffer medical evidence of an X-ray report that did not state whether a scar existed at the time of the examination was not objectively unreasonable. Further, Swan cannot show prejudice under *Strickland*. At trial, the defense offered forensic pathologist Dr. Walter Hoffman who opined that Swan's scar was not the result of a gunshot wound.[202] Any further evidence would have

---

[198] Opening Br. 54.
[199] *Id.*
[200] Opening Br. Ex. A, at 82.
[201] *Id.*
[202] *Id.* at 83.

been cumulative, at best. Therefore, this claim fails to establish that Swan's attorneys were ineffective regarding the Texas medical records. Thus, this claim is barred by Rule 61(i)(1).

### 22. Pathology Testimony

Swan next argues that his trial counsel was ineffective in handling defense expert's, Dr. Walter Hoffman's, mistaken testimony that he was "told" that Swan had been shot. According to Swan, trial counsel should have "disabuse[d] the jury that they told their expert that Swan had been shot."[203] Initial postconviction counsel presumably was ineffective, in Swan's view, for failing to raise this claim in the initial postconviction motion.

On cross examination, when Hoffman was asked about the circumstances relayed to him in his examination, he answered,

> I was told on the 19th of April, of this year, that the Defendant Swan was shot by some individual in -- at that time, and that two weapons were involved in a homicide, and that there are photographs and x-rays . . . .[204]

When initially asked about the purpose of his examination, however, he answered that he was first contacted to "ascertain whether or not this individual had sustained a gunshot wound . . . ."[205] Additionally, on redirect, Hoffman emphasized that he was initially told to determine if the individual had been shot.[206]

---

[203] Opening Br. 56.
[204] A2250.
[205] A2224.
[206] A2299-300.

This claim is barred as untimely under Rule 61(i)(1). Presumably, Swan argues that the exception of Rule 61(i)(5) applies because his counsel was so constitutionally ineffective that there was a miscarriage of justice that undermined the fundamental fairness of his trial. But lawyers are not ineffective under *Strickland* because a live witness misspeaks. And here trial counsel reasonably attempted to correct the mistake as soon as possible by emphasizing on recross that the expert was not told that Swan had been shot; he was told that the State alleged Swan had been shot. The expert then confirmed that the scar was not the result of a gunshot. As a result, Swan does not satisfy the first prong of *Strickland*. Thus, this claim is barred by Rule 61(i)(1).

### 23. Tina Warren Cleared as Suspect

Swan argues that his trial counsel was ineffective for failing to object to any of the testimony concerning Tina Warren's consideration as a suspect. Presumably, initial postconviction counsel also was ineffective for failing to raise this claim in the first motion for postconviction relief.

On cross-examination, defense counsel introduced the topic of whether Warren knew she was a suspect in the case.[207] The Superior Court overruled the State's objection to the relevance of this questioning.[208] Defense counsel continued its examination of Warren as the prime suspect because defense counsel made a strategic decision to open the door on this

---

[207] A978-79.
[208] A981.

46

topic.[209]  It was on redirect that the State asked Warren about being cleared and whether the police apologized.[210]  Later, Detective Brown testified about Warren as a prime suspect.[211]

This claim is procedurally barred as untimely under Rule 61(i)(1), and it is not saved by Rule 61(i)(5) because there was no miscarriage of justice due to a constitutional violation that undermined the fundamental fairness of the trial.  Defense counsel made a strategic decision to suggest other possible assailants, including Ms. Warren.  "If an attorney makes a strategic choice after thorough investigation of law and facts relevant to plausible options, that decision is virtually unchallengeable . . . ."[212]  Thus, Swan fails to satisfy *Strickland*, and the claim is barred.

### 24.    DNA Evidence

Swan contends that defense counsel was ineffective for failing to present certain DNA evidence and for not retaining a DNA expert.  The Superior Court summarized the relevant facts as such:

> The State hired a DNA expert to analyze blood splatter samples found in the Warren home.  She determined that both Swan and Norcross were excluded as contributors.  The defense's opening statement informed the jury of this and that she would testify to the same.  The State obviously was not going to call her as their witness, but the defense was.
>
> During trial, the prosecutor spoke with the expert.  Her DNA testimony was not as open and shut as all counsel first

---

[209] *See* A982-98.
[210] A1002.
[211] Opening Br. Ex. A, at 88.
[212] *Hoskins v. State*, 102 A.3d 724, 730 (Del. 2014).

47

believed. Under certain scenarios, Swan could not be excluded even if those circumstances might be remote. Having learned this, the prosecutor informed defense trial counsel who then spoke to the expert. After talking with her, he made the tactical decision not to risk calling her. The defense was that there was absolutely no physical evidence tying Swan to the murder scene. The potential that the expert's testimony might put a crack in that argument was a remote risk, but a risk . . . .[213]

This claim is barred under Rule 61(i)(4) because the issue of whether counsel's handling of the DNA evidence was ineffective has been formerly adjudicated.[214] Swan states that he meets the requisite criteria to establish the interest of justice exception of Rule 61(i)(4), but he identifies no new facts reflecting any change in circumstances that warrant its application.

Additionally, Swan argues that the State committed a *Brady* violation regarding the disclosure of DNA evidence. He specifically contends that

[t]he prosecution's failure to turn over this *Brady* material was highly prejudicial to Swan. Had it been provided to a reasonably competent attorney, the attorney would have been able to prove that: (1) there was just one other contributor; (2) the other contributor left his blood at the scene; and (3) Swan could not have been that contributor.[215]

This claim was also briefed and rejected by the Superior Court in connection with the initial motion for postconviction relief.[216] Presumably, Swan argues that this claim is not barred because counsel was ineffective for failing to raise the *Brady* issue on appeal. But the claim

---

[213] Opening Br. Ex. A, at 90-91.
[214] *See Swan*, 2010 WL 1493122, at *2-5; *Swan*, 28 A.3d 385-87; Opening Br. Ex. A, at 91.
[215] Opening Br. 60.
[216] A3640-47; A4900.

is barred as untimely under Rule 61(i)(1) and is not saved by the miscarriage of justice

exception of Rule 61(i)(5). As Judge Graves explained,

> Trial counsel had Pineda's DNA report that excluded Swan and Norcross as potential sources of blood found at the crime scene. They did not need the raw data she used to reach her conclusions. They did not need another expert; they had the State's expert. The problem that caused trial counsel to abandon calling Pineda occurred in the middle of trial. Trial counsel testified before Judge Babiarz as to the problem and what options they might have pursued.
>
> Ultimately, they chose not to take the risk, no matter how remote, that Pineda could not exclude Swan as a source. Why? Because their overall defense strategy was that the State had no physical evidence or confession putting Swan at the scene. They felt the risk was too high. Monday-morning quarterbacking does not work.[217]

We agree. Thus, the *Strickland* arguments do not save this claim.

### 25. Investigator Juliano

Swan contends that trial counsel was ineffective for hiring a private investigator with a criminal record. Furthermore, he contends that counsel erred for failing to request a colloquy once counsel learned that the trial judge had a familial relationship with the investigator in question. Presumably, initial postconviction counsel was ineffective for failing to raise these claims in the first motion for postconviction relief.

These claims are barred as untimely under Rule 61(i)(1), and the ineffective assistance of counsel claims do not constitute a miscarriage of justice under Rule

---

[217] Opening Br. Ex. A., at 93.

61(i)(5). Even if the hiring of this investigator fell below *Strickland*'s performance prong, Swan has not carried his burden of showing that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. Therefore, the Superior Court did not err in denying this claim.

### 26. Prosecutorial Misconduct

Swan contends that the State failed to correct testimony from Edwards that it knew was false and committed three separate *Brady* violations by not producing evidence relating to Edwards's criminal and mental history and the consideration the State offered to Edwards and Phillips. Swan's allegations of *Brady* violations may be barred by Rule 61(i)(1), (2), and (3), but Swan argues that the miscarriage of justice exception applies because the State violated his constitutional right to due process.

First, Swan contends that the State committed a *Brady* violation by failing to disclose impeachment evidence relating to Edwards's criminal history and mental health history. Evidence regarding a witness's criminal history or mental health issues that relate to the ability to accurately perceive, recollect, and communicate would be considered impeachment evidence, as this type of evidence could be helpful to attack the reliability of a State's witness. However, Swan has failed to show "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."[218] Here, defense counsel cross-examined Edwards and elicited strong

---

[218] *Starling*, 130 A.3d at 333 (quoting *Wright*, 91 A.3d at 988).

impeachment evidence concerning his criminal convictions of carjacking, burglary of his parents' home, and robbery.[219] Thus, any more criminal history is cumulative.

Regarding Edwards's mental health issues, it is unclear to us that the State knew about his mental health issues. But even if the State knew of and improperly failed to disclose Edwards's mental health information, Swan has not shown that this creates "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," given the significant amount of evidence against Swan. [220] Furthermore, the State only offered Edward's testimony to help establish a connection between Swan and Norcross, which had already been achieved through the testimony of Bridget Phillips,[221] Adam Howell[222], and Gina Ruberto.[223] Thus, Edwards's testimony was cumulative at best, and Swan has failed to identify a miscarriage of justice that would save this claim.

Second, Swan contends the State failed to disclose the consideration Bridget Phillips was paid in connection with the case. This claim fails to show any *Brady* violation resulting in a miscarriage of justice because the record shows that defense counsel was aware of the existence of a reward and its potential connection to Phillips, and defense counsel utilized it

---

[219] A2090-92.
[220] *Starling*, 130 A.3d at 333 (quoting *Wright*, 91 A.3d at 988).
[221] A1894-1907.
[222] A1722-38.
[223] A1797-824.

in cross-examination.[224]  Thus, the jury was aware of the existence of the reward, the fact that it had not been claimed, and the possibility that Phillips could get it.  As such, Swan's claim remains barred.

Third, Swan contends the State committed a *Brady* violation by failing to disclose that Edwards was granted a transfer to a different correctional facility in exchange for testifying.[225]  But Edwards testified about his agreement at Swan's trial.[226]  Furthermore, during trial, defense counsel specifically did not want the agreement admitted into evidence because it would have prejudicially bolstered Edwards's testimony as "truthful."[227]  Thus, Swan does not show a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity, or fairness of the proceedings leading to the judgment of conviction.

None of Swan's *Brady* allegations reveal any subsequent changes in factual or legal circumstances that warrant review under the interest of justice exception.[228]  Likewise, Swan has not shown a constitutional violation that would constitute a miscarriage of justice under Rule 61(i)(5).[229]

---

[224] A9277.

[225] Opening Br. 64-65.

[226] A2092-95; A9201.

[227] A2034-39.

[228] *Weedon*, 750 A.2d at 527-28.

[229] *Wright*, 91 A.3d at 985-86.

Fourth and finally, Swan contends that the State improperly elicited false testimony concerning Edwards's carjacking.[230] This claim faces the same procedural bars as the allegations of *Brady* violations. Swan argues that the State violated his due process rights by using false testimony to affect the jury's judgment, which presumably constituted a miscarriage of justice under Rule 61(i)(5).

The United States Supreme Court "has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."[231] Similarly, this Court has held that the State's knowing use of false or perjured testimony violates due process.[232] Mere contradictions, however, may not require reversal because those contradictions may not constitute knowing use of false or perjured testimony.[233] Rather, mere contradictions in trial testimony establish a credibility question for the jury.[234]

Here, Swan has proffered no evidence that the State knowingly elicited false or perjured testimony concerning the facts surrounding Edwards's carjacking. All of the facts Swan points to merely created factual discrepancies that went to the reliability of Edwards's

---

[230] Opening Br. 48.

[231] *United States v. Agurs*, 427 U.S. 97, 103 (1976)).

[232] *Jenkins v. State*, 305 A.2d 610, 616 (Del. 1973) (citing *Napue v. Illinois*, 360 U.S. 264 (1959)).

[233] *Id.* (citing *Zutz v. State*, 160 A.2d 727 (Del. 1960)).

[234] *Romeo v. State*, 2011 WL 1877845, at *3 (Del. May 13, 2011) (citing *Knight v. State*, 690 A.2d 929, 932 (Del. 1996) ("It is well-settled that the trier of fact 'is the sole judge of the credibility of the witnesses and responsible for resolving conflicts in the testimony.'")).

testimony. Thus, Swan fails to sufficiently show a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity, or fairness of his trial.

### 27. Juror Misconduct

"Swan contends that trial counsel was ineffective for failing to object to the extra-record influence from the public and failing to request an inquiry into the juror who was discussing Swan's guilt outside of the courthouse prior to deliberations."[235] Swan argues that reasonable counsel would have raised the issue of juror taint due to outside influence and discussion prior to deliberation and that trial counsel's failure to do so prejudiced Swan. Presumably, initial postconviction counsel was ineffective for failing to raise this claim in the initial postconviction motion.

This claim is barred as untimely under Rule 61(i)(1), and Swan fails to identify a miscarriage of justice under Rule 61(i)(5) that undermined the fundamental fairness of the trial.

To succeed on a claim of improper jury influence, the defendant must either prove that he was "identifiably prejudiced" by the juror misconduct or the existence of "egregious circumstances—i.e., circumstances that, if true, would be deemed inherently prejudicial so as to raise the presumption of prejudice in favor of the defendant."[236] A trial court has

---

[235] Opening Br. 66.
[236] *Black v. State*, 3 A.3d 218, 220 (Del. 2010).

discretion to decide that allegations of juror misconduct are not sufficiently credible or specific to warrant investigation.[237] We review the Superior Court's "decision on the 'mode and depth of investigative hearings into allegations of juror misconduct' and on the remedy for such misconduct for abuse of discretion."[238]

Here, after a break, a member of the sheriff's office reported to the court that they overheard a juror state "guilty guy" and "trial" while out to lunch.[239] The Superior Court noted that there is only one guilty guy and that was Norcross. Further, Norcross's admission to this crime had been presented to the jury by this point. Thus, the court decided "that the remark wouldn't connote anything."[240] The court then asked defense counsel to express its concerns. Defense counsel raised the issue that this incident could possibly mean the jurors were prematurely discussing the case and asked that the court remind the jury of their duty not to discuss the details of the trial with anyone.[241] At the end of the day of trial, the court reminded the jury "not to discuss the case with people outside the courtroom."[242]

---

[237] *Id.* at 221 (citing *Lovett v. State*, 516 A.2d 455, 475 (Del.1986)).

[238] *Cooke v. State*, 97 A.3d 513, 549 (Del. 2014) (citing *Caldwell v. State*, 780 A.2d 1037, 1058 (Del. 2001) (quoting *Massey v. State*, 541 A.2d 1254, 1257 (Del. 1988))); *see also Lovett*, 516 A.2d at 475 ("The Trial Judge has very broad discretion in deciding whether a case must be retried or the jurors summoned and investigated due to alleged exposure to prejudicial information or improper outside influence.").

[239] A2215-17.

[240] A2216.

[241] A2217.

[242] A2310-11.

Two statements taken out of context do not evidence improper jury conduct. It is true that further investigation, or more pressing by trial counsel for an investigation, could have quashed any fears. But the court was well within its discretion to decide that "guilty guy" referred to Norcross and that the statements did not warrant investigation. Further, trial counsel acted reasonably by raising its concerns to the court. As such, Swan failed to sufficiently prove either prong of *Strickland*, and the exception in Rule 61(i)(5) does not apply. We therefore find no error in the Superior Court's determination that this claim is time barred under Rule 61(i)(1).

### 28. Supreme Court Facts

Swan next contends that this Court violated his constitutional right to meaningful appellate review by relying upon facts outside the record of his case.[243] Swan does not identify those facts in his appellate briefs, but instead refers to his submissions in the Superior Court.[244] According to Swan's Superior Court submissions,[245] this Court improperly relied upon the following facts from Norcross's trial in its opinion resolving Swan's direct appeal:

> Norcross claimed that Swan started shooting, but that Norcross' gun would not fire. Swan allegedly grabbed Norcross' gun, cleared it, and then used it to shoot Warren in the head. After the two men started running to Swan's car, Swan told Norcross that he wanted to go back and kill the woman because she was a

---

[243] Opening Br. 67.
[244] *Id.* at n.238.
[245] A5597-600; A7886-90.

witness. Norcross stopped Swan by shooting him in the shoulder.[246]

These same statements appear in the factual background section (which was taken from the factual and procedural section of the direct appeal opinion) of this Court's opinion affirming the Superior Court's denial of Swan's first motion for postconviction relief.[247] Swan also argues that this Court should not have relied upon the following in its postconviction opinion: (i) the Superior Court's observation that Swan's blood could have been somewhere in the Warren home or on Kenneth Warren's body or clothes; and (ii) the Superior Court's reference to evidence of Swan's "intellectual deficit."[248]

The Superior Court did not address the merits of this claim (finding that it was best left to this Court), but did hold that the claim was untimely under Rule 61(i)(1) and not saved by Rule 61(i)(5).[249] We agree. Even if *Guy* applied here,[250] this claim is barred by Rule 61(i)(1) as untimely. Swan has not shown ineffective assistance of counsel or another constitutional violation that would constitute a miscarriage of justice under Rule 61(i)(5).

As to the statements Norcross made to police that Swan identifies in this Court's opinion on direct appeal (as well as this Court's first postconviction opinion), Swan is correct

---

[246] *Swan*, 820 A.2d at 349.

[247] *Swan*, 28 A.3d at 368.

[248] A5597-600; A7886-90.

[249] *Swan*, 2020 WL 7259626, at *46-47.

[250] The applicability of *Guy* to this claim is questionable because Swan's first postconviction counsel challenged these statements in the previous postconviction proceedings and cannot be ineffective for failing to raise them.

that those statements were not presented to the jury in his trial. Swan has not shown, however, that this Court relied upon those statements to reach its rulings and thereby deprived him of meaningful appellate review. He claims that this Court "specifically noted its reliance on a review of Mr. Norcross's trial record in considering and disposing of Petitioner's appeal" on direct appeal, but cites nothing to support this statement.[251] A footnote stating that the facts in the opinion could "be liberally cross-referenced to similar facts found in" Norcross's trial and another footnote stating that "[a]lthough this Court independently reviewed Swan's death sentence, our analysis [of the applicable statutory aggravating circumstances for imposition of the death penalty] includes several of the same points discussed in" Norcross's appeal was not an acknowledgement by this Court that it relied on facts outside the record to decide Swan's appeal.[252]

Swan also fails to mention that the identified statements appear only in the factual and procedural background section of the direct appeal opinion and the factual background section of the first postconviction opinion. The statements do not appear in the Court's analysis of Swan's substantive claims in either opinion. For example, in addressing Swan's argument that the evidence was insufficient to support his convictions, the Court did not refer to or rely upon Norcross's statement attempting to blame Swan for the murder. Instead, this Court highlighted evidence presented at Swan's trial, including but not limited to, Tina

---

[251] A5598-99; A7888.
[252] *Swan*, 820 A.2d at 346 n.2 and 360 n.54.

Warren's testimony about what happened the night of her husband's murder, Norcross's and Swan's employment at the same concrete plant where Tina Warren's purse was found after the murder, Bridget Phillips's testimony that she overheard Norcross and Swan talking about a time when Swan had been shot and observed a scar on Swan's left shoulder to which he pointed, informing her that the bullet was still there, and testimony concerning the presence of a small red car near the Warrens' house before the murder and Swan's ownership of a red Dodge Daytona.[253] There is no indication that this Court relied on the challenged statements to decide either of Swan's appeals.

The other statements Swan challenges do not originate from outside the record as he contends but are instead based on his disagreement with certain findings and rulings in his first postconviction proceeding. In concluding that Swan had not shown a reasonable probability of a different result if his trial counsel had adequately investigated and presented the DNA evidence, the Court stated this was "not a case where the exclusionary results of the DNA testing would have exonerated Swan."[254] The Court also quoted the Superior Court's observation regarding the DNA evidence:

> "[T]he fact that Swan's DNA is absent from the samples does not prove that he was not one of the murderers. **Nor does it mean that Swan's blood was not somewhere else in the Warren home or on Warren's body or clothes.** It only means that Swan's blood or DNA was not on the samples tested by ReliaGene."[255]

---

[253] *Id.* at 349.
[254] *Swan*, 28 A.3d at 385.
[255] *Id.* (quoting *Swan*, 2010 WL 1493122, at *3 (emphasis added)).

Swan contends that the bolded sentence contradicts a police officer's testimony that the blood was confined to the kitchen and that he gathered all of the blood evidence he could find,[256] which means the Court improperly relied upon evidence outside the record to decide his appeal. We disagree.

Swan's description of the police officer's postconviction testimony is inaccurate and incomplete. The police officer did recall that "the blood that was found within the scene was confined to the kitchen area and on the floor surrounding Kenneth Warren."[257] He did not testify that he gathered all of the blood evidence but that he took "[r]epresentative samples" from each area where he "visibly saw the blood."[258] In addition to taking representative samples of the visible blood at the crime scene, the police officer cut three pieces from the sweatpants Kenneth Warren was wearing for testing.[259] ReliaGene tested the blood samples and sweatpants samples (as well as scrapings of Kenneth Warren's fingernails and samples of Kenneth Warren's shirt and an order form found in the kitchen) and excluded Swan (and Norcross) as minor contributors to a DNA mix that was found in one of the blood samples and one of the sweatpants samples.[260]

---

[256] A5598; A7887.
[257] A4705.
[258] *Id.*
[259] A4661-64.
[260] A3774-80; A3790-96.

Based on this record, the Superior Court could infer that the absence of Swan's DNA from the samples did not necessarily mean it was not present elsewhere at the crime scene or on the victim or victim's clothing. The police officer did not collect, and ReliaGene did not test, all of the blood at the crime scene or all of the victim's clothing. By quoting the Superior Court's findings, this Court did not rely on evidence outside the record to decide Swan's appeal. Swan cannot show his counsel was objectively unreasonable for failing to challenge this statement or that he suffered any prejudice.

In contending that this Court improperly referred to an "intellectual deficit" he never claimed to have, Swan ignores most of this Court's analysis of his claim that trial counsel was ineffective for failing to develop and present mitigating evidence. The mitigating evidence, which the Court summarized in its postconviction opinion,[261] included testimony and reports of experts retained by Swan's postconviction counsel about brain damage, auditory information processing impairments, and memory impairments that Swan suffered.[262] The Court described the evidence of "brain injury," "brain damage," "mental health deficits," "intellectual deficit," and "IQ" as "at best, contradictory."[263] The Court also discussed the Superior Court's conclusion that this evidence was countered by, among other things, Swan's ability to hold responsible jobs and function normally in society.[264]

---

[261] *Swan*, 28 A.3d at 379-81.

[262] *See, e.g.*, A4775; A4782-88; A4545-47.

[263] *Swan*, 28 A.3d at 393-94.

[264] *Id.*

Ultimately, the Court concluded that Swan failed to show a reasonable probability that presentation of the mitigating evidence would have resulted in a different sentence. Swan's disagreement with the phrase "intellectual deficit" to describe some of the mitigating evidence he presented does not show that this Court relied on evidence outside the record as he contends. A review of the Court's entire postconviction opinion, as opposed to the two words selected by Swan, shows that the Court well-understood the nature of the mitigating evidence Swan presented.

This Court relied on copious facts within the record to affirm Swan's conviction and the denial of his first motion for postconviction relief. Nothing in either opinion suggests that the Court deprived Swan of meaningful appellate review by relying on evidence outside the record to decide Swan's appeals. Thus, Swan fails to show a reasonable probability that if his counsel had sufficiently challenged the statements above, the result of the proceedings would have been different. Nor has he shown another constitutional violation that would satisfy Rule 61(i)(5).

### 29.    Confrontation Clause

Swan next contends that the admission of the hearsay statements of co-defendant Norcross implicating himself and Swan violated his constitutional right to confrontation.[265]

---

[265] Opening Br. 68.

He specifically points to the testimony of Matthew Howell,[266] Gina Ruberto,[267] Bridget Phillips,[268] and Sergeant Charles Brown.[269]

This claim is procedurally barred by Rule 61(i)(4). This claim has been repeatedly litigated.[270] For example, in rejecting Swan's same argument on direct appeal, this Court explained:

> The trial judge properly allowed Bridget Phillips to relay Swan's adopted admissions pursuant to D.R.E. 801(d)(2)(A) & (B). Phillips testified that Norcross admitted that he and Swan were involved in the murder of Kenneth Warren. With Swan present, Norcross told Phillips that Swan was shot during the scuffle with the victim. Norcross pointed to a scar on Swan's shoulder and stated that the scar was the result of a gunshot wound that occurred during the robbery. Swan, present at the time Norcross made the statement, confirmed it. Swan then stated that the bullet is still in there, gesturing with his hand toward the scar. These statements and actions manifested Swan's adoption of belief of the truth of Norcross'[s] statements made while Phillips was present.
>
> The trial judge did not abuse his discretion by denying Swan's motion for a mistrial where one plural reference was not redacted from a taped statement made by Norcross'[s] former girlfriend, Gina Ruberto. In the statement, Ruberto repeated an account of the robbery and murder that Norcross gave her shortly after the murder had occurred. Despite the trial judge's order that references to any accomplice be redacted, the State failed to redact one plural pronoun reference where Ruberto mentioned that Norcross had said "they" parked the red car near the victim's home. Upon defense objection, the trial judge immediately provided a curative instruction to the jury:

---

[266] A1722-66.
[267] A1797-824.
[268] A1890-948.
[269] A1964-90.
[270] *See Swan*, 820 A.2d at 352-54; *Swan*, 28 A.3d at 384-85.

A portion of the tape you have just heard and a portion of the transcript . . . contained material that I have ruled inadmissible. I believe that it got in there inadvertently, but I do not know that for sure.

In any event, I have stricken that tape and that transcript from the record. They are no longer in evidence and you are to disregard anything you might recall, either from the tape or from the transcript. You may be guided by the testimony that Ms. Ruberto has given from the stand and the cross-examination you are about to hear. And the very first tape, the short tape, is still in evidence. But the tape that was just played for you is no longer evidence in this case.

This instruction neutralized prejudice to the defendant, and the jury must be presumed to have followed the court's instructions.

The trial judge took great pains to ensure that the portions of Swan's accomplice's statements (Norcross'[s] confession to the police and his out-of-court statements to Howell, Ruberto, and Phillips) that inculpated Swan were redacted, as well as any portions which appeared to shift blame from Norcross to Swan, or anyone else. Norcross'[s] statements contain sufficient guarantees of reliability and are consistent in their essential elements: that Norcross and another person dressed in camouflage clothing broke into a home occupied by a family, shot the husband, and a stole a purse. Aside from Norcross'[s] confession, the statements made to his co-worker, his girlfriend, and his wife were not made under the pressure of a police interrogation, where a declarant, arguably, is more likely to shift blame to others in order to curry favor with authorities.[271]

---

[271] *Swan*, 820 A.2d at 353-54.

Swan has not identified any change in circumstance that would warrant a review of this claim under the "interest of justice" exception. Thus, the Superior Court did not err ruling that this claim is procedurally barred.

### 30. Limited Evidentiary Hearing

Swan next contends that the Superior Court erred in not granting more time for evidentiary hearings in connection with the current postconviction motion to address claims concerning the Proctor note, the Norcross impeachment evidence, Swan's DNA exclusion, and other issues.[272] Under Rule 61(h)(1), the Superior Court has broad discretion to determine the need for an evidentiary hearing.[273] "While the decision to hold an evidentiary hearing in a postconviction proceeding is within the discretion of the Superior Court, in capital cases, holding such an evidentiary hearing should be the norm, not the exception."[274] Here, the Superior Court did allow for evidentiary hearings based on the current motion.[275] Judge Parkins held a one-day hearing on March 23, 2017, and Judge Graves held a four-day hearing in 2019. The decision not to hold more evidentiary hearings was well within the discretion of the Superior Court. Swan has not demonstrated that the Superior Court abused its discretion.

---

[272] Opening Br. 70.
[273] Del. Super. Ct. Crim. R. 61(h)(1).
[274] *Outten v. State*, 720 A.2d 547, 551 (Del. 1998).
[275] *See* A8877, A9110, A9297.

### 31. Cumulative Error

Next, Swan contends that the culmination of the constitutional infirmities undermined the integrity and reliability of Swan's conviction.[276]  Cumulative error must derive from multiple errors that caused "actual prejudice."[277]  As described above, all of the claims Swan asserts are procedurally barred.  Therefore, Swan has failed to establish cumulative error.

### 32. Actual Innocence

Finally, Swan contends that he is actually innocent based upon the DNA evidence, Swan's Texas prison medical records, Norcross's October 2006 recantation testimony, and the fact that Norcross's denial that Swan was his accomplice is corroborated by statements Norcross made within 24 hours of his arrest.[278]  For the reasons discussed throughout this Opinion, we find that Swan has not established his actual innocence.

### B. The Superior Court Did Not Err in Denying Swan's Motion to Recuse

In the final issue on appeal, Swan contends that the Superior Court erred in denying his motion to recuse.   Swan argues that due process demanded recusal, even if there was no actual bias, because, objectively speaking, the probability of actual bias was too high to be constitutionally tolerable. We disagree.

---

[276] Opening Br. 71.
[277] *Michaels v. State*, 970 A.3d 223, 231-32 (Del. 2009) (citing *Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008)).
[278] Opening Br. 72-73.

When confronted with a motion to recuse or disqualify based on a claim of personal bias or prejudice, a Delaware judge undertakes a two-step analysis outlined by this Court in *Los v. Los*.[279] First, the judge must be subjectively satisfied that she can proceed to hear the matter free from bias or prejudice concerning the party. Even if the judge is satisfied that she can continue free from bias, "the judge must objectively examine whether the circumstances require recusal because ' there is an appearance of bias sufficient to cause doubt as to judge's impartiality.'"[280]

Generally, "a trial judge satisfies the first prong of the *Los* test if he makes that determination on the record."[281] Here, the Superior Court judge explicitly stated that he believed he could continue to hear the case free from bias.[282] We see no abuse of discretion in this decision.

Therefore, the claim turns on the second prong—the objective test. Swan points to numerous specific actions he contends demonstrate an objective appearance of bias that would call the impartiality of the trial judge into question.[283] Specifically, Swan argues that the potential for objective bias is evident in "the court's repeated derogatory references to the length of Swan's pleadings, its irrelevant basis for failing to remove conflicted Delaware

---

[279] 595 A.2d at 384-85.

[280] *Meso Scale Diagnostics, LLC v. Roche Diagnostics GMBH*, --- A.3d ---, 2021 WL 419146, *8 (Del. Feb. 15, 2021).

[281] *State v. Wright*, 2014 WL 7465795, at *3 (Del. Super. Ct. Dec. 16, 2014).

[282] A8885 ("So my subjective belief is that I can remain objective, free of bias and prejudice and try to decide this case.").

[283] Opening Br. 83-90.

counsel, its repeated attack upon Swan's counsel for the lengthy proceedings despite the State [and] the court's contribution to the delays, its erroneous attack on federal counsel for local counsel's error, [and] its actions as a third prosecutor throughout the proceedings."[284]

The main focus of the second prong is whether an objective observer, examining all of the circumstances, would conclude that a fair or impartial hearing is unlikely.[285]  The Superior Court considered the second *Los* prong, stating "the appearance of bias has no legs. The fact that you may not like what I do does not create a bias.  So I am fully satisfied that Mr. Swan is going to be afforded a fair and impartial process."[286]  We agree.  In *Gattis v. State*, this Court, faced with a similar appeal of the denial of a motion to recuse, stated,

> Judicial rulings alone, such as the denial of a motion to recuse or disqualify or of a request to increase the time limitation on the briefing schedule or the length of the briefs, are insufficient bases for recusal. To an objective observer, these particular rulings would carry little or no weight.[287]

Furthermore, statements that may be construed as hostile toward defense counsel do not necessarily equal objective bias.[288]  Nothing Swan has proffered evidences an appearance of bias.  Instead, Swan's complaints about the behavior of the judge who ultimately decided— and denied—the postconviction relief motion now before us appear to be the product of Swan's disagreement with the decisions the judge made throughout this process.  That those

---

[284] Reply Br. at 53.
[285] *Fritzinger v. State*, 10 A.3d 603, 613 (Del. 2010).
[286] A8885.
[287] *Gattis*, 955 A.2d 1286; *State v. Bradley*, 2017 WL 2209896, at *4 (Del. Super. Ct. May 8, 2017).
[288] *See Jones v. State*, 940 A.2d 1, 18-19 (Del. 2007).

decisions expressed disagreement with and rejected Swan's arguments is not evidence of hostility or bias. Thus, the Superior Court did not abuse its discretion in denying Swan's motion for recusal.

## III. CONCLUSION

Based on the foregoing, the Superior Court's February 21, 2020 Memorandum Opinion is AFFIRMED.